UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 0:20-cr-13-DLB-EBA

UNITED STATES OF AMERICA,                                                    PLAINTIFF,

v.                **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

JOSHUA A. GAMBLE,                                                            DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

### I. Introduction

This matter is before the Court on Defendant Joshua A. Gamble's motion to suppress the search and seizure of a residence located at 49 Chapman Road, Greenup, Kentucky. [R. 57]. This matter has been referred to the undersigned for a recommended disposition. [R. 6]. Having reviewed the parties' briefs and supplemental filings, for the reasons outlined herein, the Court recommends that the Defendant's motion be denied.

### II. Factual and Procedural History

On August 24, 2020, Greenup County Sheriff Matt Smith was conducting routine patrol along Kentucky Route 503 when he witnessed a vehicle traveling in the opposite direction driving slowly. Sheriff Smith observed the vehicle driving erratically, swerving on the roadway and nearly running into an adjacent yard. Smith turned around and followed the vehicle. He saw that it was still swerving and not maintaining its lane. Eventually, the vehicle's emergency indicators came on and it pulled into an abandoned driveway. Smith pulled in immediately behind it.

Smith activated the emergency lights on his patrol car, radioed for back up, and got out to investigate the vehicle. He saw that there were three occupants in the car, and immediately smelled the odor of burnt marijuana as he approached the driver's side. Smith removed the driver from the car. When asked, the driver of the vehicle admitted that he had smoked marijuana earlier in the day and that he had handed marijuana to the individual seated next to him in the passenger seat. At this time, Sheriff Smith's backup—Deputy Shawn Heighton—arrived at the scene. The two officers asked the female individual in the passenger seat to exit the car. They followed up by asking the female passenger where the marijuana was located. The passenger removed the marijuana from the car's center console and gave it to the officers. At that time, she complained that she was having trouble breathing, so the officers called an ambulance for her.

Officers Smith and Heighton then conducted a search of the vehicle. Inside they located two cylindrical tubes that were taped together. The tubes contained a substance the officers suspected to be methamphetamine wrapped in cellophane and two syringes. A further search of the vehicle yielded another syringe in the rear passenger door compartment. At that time, an ambulance arrived and transported the female passenger to the hospital. Officers then transported the driver and the other passenger to the Greenup County Detention center.

On the way to the jail, the vehicle's other passenger began complaining of difficulty breathing. Out of caution, police arranged for another ambulance to meet them at the jail. Upon arrival at the jail, the passenger was taken by ambulance to the hospital. This left the driver alone with police. At that time, the driver expressed his desire to talk to police about where he had gotten the drugs. The driver was given his *Miranda* warnings and interviewed. He advised police that he had called Defendant Joshua Gamble earlier in the day and asked if he could come by

Gamble's home. The driver told Gamble that he would bring him a small YETI brand cooler that Gamble had previously been interested in.

The driver and his two passengers then drove to Gamble's residence on Chapman Road. At the Chapman road residence, the driver agreed with Gamble to trade two coolers for a quantity of methamphetamine. One of the passengers waited outside in the car while the driver and the other passenger entered the home. The driver told police that he was given a clear plastic sandwich baggie containing what the driver believed to be 1.5 grams of methamphetamine in exchange for the coolers. When the driver and his passenger exited, the other passenger who remained in the car was ingesting methamphetamine that he did not have prior to arriving at the Gamble residence. The driver further explained to police that in previous interactions with Gamble, the driver would purchase approximately 1.75 grams of methamphetamine for $90.00. The driver reported that he had purchased methamphetamine from Gamble on four or five different occasions.

Later that night, using the information obtained from the driver's statement, Sheriff Smith applied for and was granted a search warrant issued by a state district judge. Smith used the driver's name in the warrant affidavit, but it has since been redacted. The warrant authorized a search of the residence, vehicles that were on the premises, Gamble and other persons found on the premises, and any and all containers where controlled substances or paraphernalia might be located. Police officers, including the Ashland Police Department SWAT team executed the warrant at Gamble's residence—49 Chapman Road. The search yielded approximately 7 ounces of methamphetamine, digital scales, four firearms, cash, and a YETI cooler. No evidence was recovered from any vehicle. After the search, Gamble gave an incriminating statement regarding

his involvement with illegal drug distribution.

Gamble now seeks to suppress the evidence obtained as a result of the search warrant and any evidence derivatively obtained from the same. [R. 57-1 at p. 5]. In support of his motion, Gamble asserts that the information contained in the affidavit used to obtain the search warrant was insufficient to establish probable cause, absent some corroboration by the affiant. [*Id*.]. Gamble further argues that, because the search lacked probable cause, the evidence and statements elicited as a result should also be suppressed as fruits of the poisonous tree. [*Id*. at p. 6]. The United States, in response, argues that the warrant did establish probable cause, and alternatively that the good faith exception to the exclusionary rule applies under the circumstances.

### III.  Standard of Review

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. In order for a search to be reasonable, law enforcement generally must obtain a warrant, supported by probable cause, from a neutral and detached judicial officer. *Johnson v. United States*, 333 U.S. 10, 13-14 (1948). "Probable cause to conduct a search exists when the facts and circumstances described in the [warrant] affidavit indicate a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Algie*, 721 F.2d 1039, 1041 (6th Cir. 1983); see also *Illinois v. Gates*, 462 U.S. 213 (1983). Probable cause is determined by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). A judicial officer's determination of probable cause should be paid great deference by reviewing courts. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of

the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

When a search warrant is based on information from an informant, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances . . ." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). Independent corroboration of a confidential informant's story is not required, so long as an issuing judge can conclude independently that the information is reliable. *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (citing *United States v. McRaven*, 401 F.3d 693, 697 (6th Cir. 2005); see also *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000) (holding that an affidavit supporting a search warrant is sufficient where a known person, named to the magistrate, to whose reliability a law enforcement officer attests with some detail, states that he has seen a particular crime and particular evidence in the recent past, such that a neutral magistrate may believe that the evidence of a crime will be found).

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Illinois v. Krull*, 480 U.S. 340, 347 (1987). If the evidence was "obtained in objectively reasonable reliance" on a "subsequently invalidated search warrant," it should not be suppressed. *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984). For the so-called good faith exception to apply, the affidavit must contain a "minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Carpenter*, 360 F.3d 591, 595-96 (6th Cir. 2004) (citing *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998) (upholding a search where the affidavit underlying the warrant described the residence, the items sought, and the defendant's scheme,

but connected the place to the illegal activity only by stating that the residence was available to the defendant)). The good faith exception does not apply when an affidavit so lacks indicia of probable cause that belief in the existence of probable cause would be objectively unreasonable. *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013). Similarly, the exception does not apply where the issuing judge was misled by false information in the affidavit. *Leon*, 468 U.S. at 923.

A person who claims to have been aggrieved of a constitutional violation bears the initial burden of production and persuasion to suppress evidence. *United States v. Smith*, 783 F.2d 648, 650 (6th Cir. 1986). Once the defendant has made basis for his motion, the government then has the burden of demonstrating that there was not a constitutional violation. See *United States v. Bradley*, 163 Fed. Appx. 353, 357 (6th Cir. 2005) (citing *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). The controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence. *Matlock*, 415 U.S. at 177 n. 14.

IV. Analysis

Gamble seeks to suppress the evidence recovered as a result of the search of his residence and any evidence or statements derived therefrom. In support of his motion to suppress, Gamble asserts that the affidavit prepared by Sheriff Smith was "devoid of probable cause" and "based on facts cited . . . without independent corroboration." [R. 57-1 at p. 5]. Gamble bases this assertion on the fact that the warrant affidavit has no mention of corroboration. [*Id.*]. He further argues that, because the search lacked probable cause, any statements made after are barred as fruit of the poisonous tree.

The United States responded to Gamble's motion, in turn. It asserts first that the warrant

affidavit did establish probable cause. [R. 68 at p. 5]. The government argues that based on the totality of the circumstances, the informant's statements displayed indicia of reliability [*Id.* at p. 6]. The United States bases that assertion on the fact that the driver/informant was not anonymous and was named in the affidavit. [*Id.* at p. 7]. Further, evidence other than the driver/informant's statement compounded to corroborate his story. This evidence includes: the informant's proximity to Gamble's home at the time of arrest, the description of the drugs, the fact that both passengers required medical attention from ingesting drugs, and the drugs and syringes found inside the car. [*Id.* at p. 8]. While the United States concedes that, under the circumstances, the search warrant affidavit is "a closer than normal call", it maintains that it was based on probable cause. [*Id.* at p. 4].

In the alternative, the United States argues that absent probable cause, the warrant was executed in good faith, thus is subject to the "good faith exception". [*Id.* at 9]. As evidence, the United States argues that the issuing judge was neutral and detached and was not misled by the affidavit. [*Id.* at pp. 10-11]. Further, it argues that the affidavit established a sufficient nexus between the illegal activity and the place searched. [*Id.* at 9]. Finally, the United States asserts that police in the instant case believed that the warrant was properly issued and relied on it. [*Id.* at 10].

Here, the warrant affidavit established probable cause. Given the information contained in the affidavit, the issuing judge correctly determined that, based on a totality of the circumstances, probable cause to search 49 Chapman Road existed. Gamble hinges his argument to the contrary almost entirely on the assertion that the affidavit was based solely on the informant's statement and lacked any corroborating evidence. However, an issuing judge can

base a finding of probable cause on an informant's tip, if that issuing judge can conclude independently that the informant is reliable. *McRaven*, 401 F.3d at 697. An informant's statement that he saw a particular crime and particular evidence in the recent past *and* who is known, named to the magistrate, and whose reliability is attested by an officer can render an affidavit sufficient to find probable cause. *Allen*, 211 F.3d at 976. The affidavit must state facts that support an independent judicial determination that the informant is reliable, but those facts aren't required to take any particular form. *McRaven*, 401 F.3d at 697. The affidavit certainly could state that police corroborated significant parts of the informant's story, or there could be other indicia of reliability, "such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name." *Id.*

In the case at hand, the affidavit submitted by Sheriff Smith set forth in detail enough information for the issuing judge to make a finding of probable cause. Though Gamble seems to allude in his motion that the informant was anonymous [R. 57-1 at p. 5] that is simply not the case. His name has since been redacted, but it was included in the affidavit and known to police (albeit for a short time). Further, the informant identified Gamble by name and provided an exact location and description of his residence. He provided a clear and detailed first-hand account of the most recent drug transaction he participated in with Gamble, including the form of payment (the coolers) and the approximate quantity of drugs. The informant's story matched evidence that was recovered from his car during the traffic stop, including the location of the drugs bartered for with Gamble. His story is further corroborated by the fact that his passengers required medical attention for recently using methamphetamine. Finally, and perhaps most significantly, the informant made a statement against his own penal interest by describing a pattern of prior drug

transactions he had entered into with Gamble. See *United States v. Harris,* 403 U.S. 574, 583 (1971) (holding that admissions of crime carry their own indicia of credibility—sufficient at least to support a finding of probable cause).

In sum, the issuing judge's decision to find probable cause was not arbitrary, thus it should not be reversed. See *Allen*, 211 F.3d at 973. Based on the totality of the circumstances, the issuing judge had a substantial basis to conclude that evidence of wrongdoing would be uncovered in the execution of the warrant. The affidavit contained a detailed statement from a named informant with enough indicia of credibility to find the requisite probable cause. For those reasons, Gamble's motion to suppress should be denied.

Although the warrant affidavit was sufficient to establish probable cause, the Court also agrees with the United States that, absent a valid finding of probable cause, the warrant was relied upon in good faith. Thus, it would also be subject to the good faith exception. In order for the good faith exception to apply, the affidavit must contain a sufficient nexus between the crime and the place searched. *Brown*, 828 F.3d at 385. Further the affidavit cannot be so lacking in probable cause that belief in its existence is objectively unreasonable. *Rose*, 714 F.3d at 367. Finally, the issuing judge must not have been misled by false information, nor can he fail to act in a detached or neutral fashion. *Leon*, 468 U.S. at 923.

If probable cause was determined to be absent from the affidavit, under the circumstances at bar, the good faith exception would certainly apply here. The affidavit contained detailed and specific information regarding the alleged illegal activity and established a clear nexus between that activity and the place to be searched. The informant's statement recounted the specific instance in which he traded the cooler for drugs at Gamble's residence. Here, the informant

actually connected the drugs to the residence, thus a sufficient nexus was established. See *United States v. Higgins*, 557 F.3d 381 (6th Cir. 2009) (finding a nexus insufficient where an informant identified a defendant's residence as a the site of a drug operation, but failed to assert that he had been inside or seen drug evidence therein).

Additionally, as previously discussed, the affidavit is not so devoid of probable cause that finding its existence is objectively unreasonable. Affidavits that are so lacking in indicia of probable cause contain only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). The standard by which an affidavit is judged for purposes of good faith is less demanding than the threshold to prove the existence of probable cause in the first place. *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). In this case, the affidavit certainly was not so devoid of probable cause that its existence was objectively unreasonable. The informant's statement contained specific information regarding the alleged illegal activity and described the factual circumstances with a particularity that demonstrated knowledge and veracity. The warrant affidavit was not predicated on suspicions nor was it conclusory.

There is also no indication or allegation that the issuing judicial officer was misled by false information. Gamble, in this regard, alleges that because Sheriff Smith is an experienced law enforcement officer "he knew or should have known that he needed to verify the information provided by an individual who he had never bet [sic] before, before he presented a sworn affidavit to a Judge." [R. 76 at p. 3]. However, this is not the proper analysis. The relevant question is whether the officer reasonably believed that the warrant was properly issued, not

whether probable cause existed in fact. *Carpenter*, 360 F.3d at 598. That determination must be made by examining the four corners of the affidavit, just as in a probable cause determination, and not by information known to an officer but not included. *Laughton*, 409 F.3d at 752. Here, the affidavit is not so lacking in indicia of probable cause that an objectively reasonable officer would not rely on it. Further Gamble does not allege that Sheriff Smith sought to provide a misleading factual basis to the judge, nor does he allege that the judge failed to act in a neutral and detached manner. By all accounts, the officers relied in good faith on the warrant, thus Gamble's motion to suppress should be denied.

V. Conclusion

For the above reasons, it is RECOMMENDED that the Defendant's Motion to Suppress [R. 57] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed March 24, 2021.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge